In the

# UNITED STATES COURT OF APPEALS
for the Seventh Circuit

## No. 17-3636

UNITED STATES OF AMERICA,

**Plaintiff-Appellee,**

v.

RONALD T. COLEMAN,

**Defendant-Appellant.**

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 16-CR-723 — Charles R. Norgle, *Judge*.

# BRIEF OF THE UNITED STATES

JOHN R. LAUSCH, JR.
United States Attorney
for the Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

DEBRA RIGGS BONAMICI
Assistant United States Attorney
Chief of Appeals, Criminal Division

MELODY WELLS
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

JURISDICTIONAL STATEMENT ..................................................................... 1

ISSUE PRESENTED FOR REVIEW .................................................................. 1

STATEMENT OF THE CASE .............................................................................. 1

SUMMARY OF ARGUMENT ........................................................................... 11

ARGUMENT ....................................................................................................... 12

I.     The District Court Did Not Abuse Its Discretion in Overruling
Defendant's Objection to Witness Testimony Explaining Prior
Inconsistent Statements .................................................................... 12

     A.    Standard of Review ..................................................................... 12

     B.    Analysis ....................................................................................... 13

II.    The Government's Witness Did Not Testify Falsely and the
Government Did Not Knowingly Present False Testimony ............ 19

     A.    Standard of Review ..................................................................... 19

     B.    Analysis ....................................................................................... 19

III.   The District Court Did Not Err in Applying a Two-Level
Guidelines Enhancement For Obstruction of Justice ...................... 22

     A.    Standard of Review ..................................................................... 22

     B.    Analysis ....................................................................................... 22

IV.   The Below-Guidelines Sentence of 60 Months' Imprisonment
Was Substantively Reasonable and Did Not Violate the Eighth
Amendment ........................................................................................ 24

     A.    Standard of Review ..................................................................... 24

     B.    Analysis ....................................................................................... 24

i

CONCLUSION.............................................................................................. 29

# TABLE OF AUTHORITIES

## CASES

*Gomez v. Ahitow*, 29 F.3d 1128 (7th Cir. 1994)................................................. 16

*United States v. Adcox*, 19 F.3d 290 (7th Cir.1994) .................................. 20, 21

*United States v. Boswell*, 772 F.3d 469 (7th Cir. 2014) ........................... 12, 15

*United States v. Cephus*, 684 F.3d 703 (7th Cir.2012)................................... 17

*United States v. Christian*, 342 F.3d 744 (7th Cir. 2003) .............................. 27

*United States v. Chychula*, 757 F.3d 615 (7th Cir. 2014) .............................. 22

*United States v. Dunnigan*, 507 U.S. 87 (1993) ........................................ 20, 23

*United States v. Durham*, 645 F.3d 883 (7th Cir. 2011)..................... 12, 16, 18

*United States v. Gould*, 983 F.2d 92 (7th Cir. 1993)....................................... 27

*United States v. Holt*, 170 F.3d 698 (7th Cir. 1999)........................................ 27

*United States v. Johnson*, 612 F.3d 889 (7th Cir.2010) ................................. 22

*United States v. Jones*, 696 F.3d 695 (7th Cir. 2012)................................ 24, 26

*United States v. Koon*, 518 U.S. 81 (1996)....................................................... 28

*United States v. Mbaye*, 827 F.3d 617 (7th Cir. 2016) ................................... 23

*United States v. O'Brien*, 618 F.2d 1234 (7th Cir. 1980) ............................... 18

*United States v. Reese*, 666 F.3d 1007 (7th Cir. 2012) ................................... 15

*United States v. Saadeh*, 61 F.3d 510 (7th Cir. 1995) ........................ 19, 20, 21

*United States v. Santiago*, 798 F.2d 246 (7th Cir.1986) ................................ 21

*United States v. Statham*, 581 F.3d 548 (7th Cir. 2009) ................................ 27

*United States v. Taylor*, 701 F.3d 1166 (7th Cir. 2012) .................................. 23

*United States v. Thomas*, 86 F.3d 647 (7th Cir. 1996).................................... 15

*United States v. Thompson*, 359 F.3d 470 (7th Cir. 2004) ......................... 15, 16

*United States v. Watts*, 12 CR 87-1 (N.D.I.L. 2013) ........................................ 28

## STATUTES

18 U.S.C. § 641 ................................................................................................ 28

18 U.S.C. § 1512(c)(2) ...................................................................................... 5

18 U.S.C. § 3553 ................................................................................. 12, 24, 25

## RULES

Fed. R. Evid. 611(c) .......................................................................................... 18

Federal Rule of Criminal Procedure 33 .......................................................... 9

Federal Rule of Criminal Procedure 401 ........................................................ 15

## JURISDICTIONAL STATEMENT

Defendant-Appellant Ronald T. Coleman's jurisdictional statement is complete and correct.

## ISSUE PRESENTED FOR REVIEW

Did the district court abuse its discretion in overruling defendant's relevance objection and permitting testimony by a witness explaining prior inconsistent statements to the FBI?

Did the government's witness testify falsely and did the government knowingly present false testimony?

Did the district court err when it applied the obstruction of justice sentencing enhancement after defendant perjured himself at trial?

Was the below-Guidelines sentence of 60 months' imprisonment imposed by the district court substantively reasonable?

## STATEMENT OF THE CASE

### *Offense Conduct*

From March 2013, through June 12, 2014, defendant was a Chicago Police Officer assigned to investigations of drug trafficking organizations, including a federal grand jury investigation into the drug trafficking organization operated by Kenneth Shoulders and other members of the Conservative Vice Lord street gang on the West side of Chicago near Douglas

Park (the "Shoulders DTO").[1] Tr. 182. The investigation was known as Operation Five Leaf Clover. *Id.* As a member of the investigative team, defendant participated in all aspects of the investigation and was aware of the identities of the targets of the investigation and their associates. Tr. 182-83, 186; PSR 9. During the course of the investigation, Rodney Bedenfield was identified as a heroin supplier to the Shoulders DTO, and Dewan Davis was identified as an associate of Bedenfield. Tr. 187, 200.

During the investigation, defendant disclosed to his supervisor that he personally knew two targets of the investigation: Kenny Shannon and Derek Washington because he played basketball with them. Tr. 182-83, 186.

Defendant also knew Dewan Davis, but he never disclosed this to anyone involved in Operation Five Leaf Clover. Tr. 201, 325; PSR 8. Defendant first met Davis and Davis's cousin, Laron Conway, when they attended Providence St. Mel High School in Chicago together in the late 1980s. Tr. 244. In fact, Conway and defendant both played on the high school basketball team.

---

[1] Citations to the Original Electronic Record on appeal are to "R.," followed by the district court document number. Citations to the trial transcript are to "Tr.," followed by the page number. Citations to the exhibits admitted in evidence at trial are to "Government Exhibit," followed by the name or number used to identify the exhibit at trial. Citations to the Presentence Investigation Report, R. 59, are to "PSR," followed by the paragraph number. Citations to the sentencing transcript are to "S. Tr.," followed by the page number. Citations to the defendant's opening brief are to "Br.," followed by the page number. Citations to defendant's Appendix are to "App.," followed by the page number.

Tr. 244. In the years after high school, defendant and Conway were in touch occasionally, meeting at high school gatherings and similar events. Tr. 248-49. Defendant likewise stayed in touch with Conway's cousin, Davis. Tr. 326-27.

On or about June 5, 2014, as part of his work on Operation Five Leaf Clover, defendant conducted surveillance of a meeting between Davis and Bedenfield. Tr. 197-99. As of that date, the law enforcement team for Operation Five Leaf Clover intended to execute arrest and search warrants on June 12, 2014. In connection with this planned operation, the team had identified approximately 10-12 potential houses to search and over 30 potential targets to arrest. Tr. 202-05. Defendant knew of these plans. Tr. 205-09; PSR 9.

On or about June 9, 2014, at approximately 9:30 a.m., defendant spoke to Laron Conway by telephone. Tr. 258. During the call, defendant instructed Conway to tell Davis to cut out and clean up whatever illegal activity Davis was involved in because the police were coming to search 10-12 houses soon. Tr. 259-60. In addition, defendant told Conway to tell Davis that the police would be searching Davis's house and that defendant did not want to walk into a house and see Davis. Tr. 261.

After the call with defendant, Conway spoke by telephone with Davis and passed on the information he learned from defendant. Tr. 263-64.

On or about June 10, 2014, from approximately 12:16 p.m. to approximately 4:14 p.m., Davis talked to Bedenfield four times by phone.

Tr. 336-48; Government Exhibit Call Transcripts. The calls were intercepted over a court-authorized wiretap on Bedenfield's telephone. *Id.* During those calls Davis told Bedenfield that he was being investigated and that police would be looking for him. *Id.*

Following these calls, surveillance officers were sent to Bedenfield's residence. Tr. 211. There, an officer saw Bedenfield leave carrying one large bag and two smaller bags. Tr. 421-23. Bedenfield brought the bags to another residence located about a block away on South Christiana Avenue. Tr. 424-25. The investigative team was not planning to search the Christiana Avenue residence before officers saw Bedenfield bringing bags to that location. Tr. 232. However, as a result of the calls between Davis and Bedenfield, officers obtained a search warrant for the Christiana Avenue residence. Tr. 234.

Two days later, on June 12, 2014, Chicago Police officers and DEA agents executed over 30 federal and state arrest warrants, and 8 federal search warrants in connection with Operation Five Leaf Clover. This included arresting Rodney Bedenfield and searching the residences associated with him, including the Trumbull, Spaulding, and Christiana residences. During the search of 2111 South Christiana, officers discovered 5 loaded handguns, a loaded rifle, additional ammunition, approximately 403 grams of heroin, three digital scales, a hand mixer and lactose (used to mix and cut heroin), two heat

sealers and plastic bags (used to package heroin), and a money counter. Tr. 432-41; PSR 13.

### *Indictment and Trial*

On November 1, 2017, a grand jury returned and indictment charging defendant with a single count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). R. 1. Defendant pleaded not guilty, and trial was held from August 8, 2017 through August 10, 2017. R. 49, 54. The jury returned a guilty verdict.

At trial, the government presented evidence showing beyond a reasonable doubt that the defendant obstructed justice by passing to Laron Conway sensitive information about planned arrests and searches in the investigation of the Shoulders DTO. Defendant told Conway to tell Davis to "cut that shit out" because the police would be searching between 10 and 12 houses. Tr. 259. Defendant instructed Conway to share that information with Dewan Davis, Conway's cousin and a known associate of a primary target of Operation Five Leaf Clover, Rodney Bedenfield. *Id.* 259, 322.

Defendant obtained this information as a member of the Operation Five Leaf Clover team, who were investigating the heroin trafficking organization operated by the Conservative Vice Lords in the Douglas Park neighborhood of Chicago. As part of the team, defendant knew the targets and subjects of the investigation, monitored the wiretaps, conducted surveillance, and participated in case-related team briefings. Tr. 182-83, 186. Defendant

disclosed to his supervisors his contact with the lead targets of the investigation during basketball games, however, he never disclosed the fact that he knew Davis. Tr. 186.

As time for the arrests and searches approached, defendant learned at team briefings that they were seeking approval to arrest over 30 targets and search 10-12 houses, which lists were ultimately pared down based on the evidence. Tr. 205, 229. On June 5, 2014, defendant conducted surveillance at one of the stash houses operated by the gang's primary heroin supplier, Rodney Bedenfield. Tr. 192-93. While there, defendant observed Bedenfield meet with his associate Dewan Davis, who defendant positively identified based upon a prior arrest photo. Tr. 198-99. As a result, defendant knew that Davis was an associate of Bedenfield's, and was connected to at least one of Bedenfield's stash houses, a location defendant knew would likely be searched.

On June 10, 2014, a call between Davis and Bedenfield was intercepted. Tr. 210-12; Government Exhibit Call Transcripts. On that call Davis said that he had talked to his cousin Laron [Conway], who received information about the coming police operation from his "homie on the task force." Tr. 336. After hearing that call, defendant did not tell anyone at CPD or FBI that he knew Davis, that he had Conway's telephone number, or that he had spoken to Conway on June 9, 2014. *See* Tr. 211 (Sergeant Michael Nuñez describing defendant's leak as "shock[ing].").

On that same day, Davis contacted and spoke to Rodney Bedenfield by phone on approximately four occasions. *Id.* The investigative team intercepted these calls and the calls were admitted at trial. Government Exhibit Calls. On the calls Davis warned Bedenfield of the pending police raids. *Id.* Davis told Bedenfield that the police were planning on raiding between ten and twelve houses and that the information came from a "homie on the task force." Tr. 336. Through Special Agent Keith Hennings, the government admitted telephone records that corroborated the calls between defendant and Conway, Conway and Davis, and Davis and Bedenfield. Tr. 401-02.

Officer Homer Ramirez testified that, following the intercepted telephone calls between Davis and Bedenfield, he was deployed to Bedenfield's South Spaulding Avenue residence where he observed Bedenfield leaving the house with multiple bags. Tr. 418, 422-23. He witnessed Bedenfield drive these bags one block over to a residence on South Christiana Avenue and bring the bags inside. Tr. 423-24.

Officer Jose Almanza testified that, during the search of the Christiana residence on June 12, 2014, officers discovered five handguns, multiple handgun magazines, a rifle, multiple rifle magazines, multiple rounds of ammunition, four bags of heroin, two containers of lactose, a hand mixer, three digital scales, two heat sealers, multiple plastic bags, and a money counter. Tr. 434-40.

Laron Conway and Dewan Davis both testified at trial that that they were cousins, that defendant knew them from high school, and that they each had had been in limited and periodic contact with defendant since high school. Tr. 241, 244, 322. Both described their communications with the defendant regarding the investigation. Conway testified that on June 9, 2014, he received a telephone call from an unidentified woman who instructed him to call defendant. Tr. 256-57. Conway called defendant and defendant asked him if "Dewan" [Davis] was his cousin. Tr. 259. Defendant told Conway to "cut that shit out. We're going to be hitting ten to 12 houses. One of them is his. I don't want to see him in there when we get there." Tr. 259. Conway also recalled that defendant told him that Davis needed to "clean it up." *Id.*

After the call, Conway attempted to call Davis several times, and ultimately passed the information from defendant to Davis during a phone call on June 10, 2014. Tr. 263-64. Conway and Davis spoke again the next day and discussed defendant's message a second time. Tr. 265.

Conway acknowledged during his testimony that, in his initial interviews with the FBI, he did not tell the complete truth about his conversations with defendant. Tr. 251. When asked why, he explained that he was "trying to protect some people, and I was scared myself." Tr. 251. In response to follow-up questions, Conway stated that he was trying to protect defendant and Davis and that he was afraid for his family. *Id.*

Dewan Davis testified that, during a time of unemployment, he sold heroin and marijuana, and periodically worked for Bedenfield's heroin trafficking operation. Tr. 313, 315, 319. Davis said that he was familiar with Bedenfield's residence located on the 2100 block of South Spaulding, and that the residence was used to store "[h]undreds of pounds" of heroin. Tr. 319. Davis testified that, after receiving the call from Conway on June 10, 2014, warning about potential law enforcement actions, he called Bedenfield to pass on the information. Tr. 330-31, 344-48.

Finally, the defendant testified at trial and presented his version of the June 9 call with Conway. According to defendant, the purpose of the call was to organize a Father's Day picnic for the upcoming weekend. Tr. 479-80.

### *Conviction, Post-Trial Motions, and Sentencing*

On August 10, 2017, the jury convicted the defendant of obstruction of justice. Following the trial, the defendant moved, pursuant to Federal Rule of Criminal Procedure 33, for a new trial. R. 52. In the motion, defendant argued that Davis's testimony did not support the jury verdict, Conway's testimony was not credible, the defendant's testimony was credible, and that the government did not prove that defendant acted corruptly. *Id.* The district court denied the motion, finding that there was "sufficient evidence to rationally allow the jury to conclude that Defendant did pass important information about the Operation to Conway, Davis, and Bedenfield." R. 52 at 7. The district

court rejected defendant's argument that Conway's testimony could not be trusted over his, holding that Conway's explanation that he "initially withheld information from the FBI and attendant prosecutors because he did not want to get himself, Davis, or Defendant in trouble" was "a sufficient basis upon which the jury could believe Conway's testimony." *Id.* Furthermore, the court reasoned, to believe defendant's version of events would require the jury to overlook defendant's failure to inform his supervisors about his relationship with Davis and the June 9 call with Conway. *Id.* 7-8. On December 13, 2017, the defendant was sentenced to serve 60 months' imprisonment, followed by two years' supervised release. S. Tr. 37. Over the defendant's objection, the district court imposed two guidelines enhancements. The first was a two-level enhancement for obstruction of justice, based on the court's finding that the defendant committed perjury when he testified at trial. S. Tr. 7-8. The second was a two-level enhancement for abusing a position of trust. *Id.* 11. The resulting guidelines range was 97-121 months' imprisonment. *Id.* 36. Before imposing the sentence, the court adopted the findings in the Pretrial Investigation Report. S. Tr. 3. In imposing the below-guidelines sentence of 60 months, the district court weighed all of the § 3553 factors and emphasized the need to deter conduct similar to Coleman's. *Id.* 11, 36-37.

# SUMMARY OF ARGUMENT

The district court properly overruled the defendant's objection to Conway's testimony explaining his prior untruthful statements to agents about his contact with defendant. Conway's explanation for his lack of candor with the FBI was relevant to the jury's evaluation of his credibility. Defendant had ample opportunity to cross examine Conway about his statements to law enforcement agents, test the reasons he gave for inconsistencies between those statements and his trial testimony, and argue that the jury should not find his testimony credible. The government's questions were not improper and any error was not plain, and in any event harmless.

Second, defendant has not, and cannot, show that inconsistencies between Conway's recollection about receiving a call from an unidentified woman and telephone records constituted perjury, much less that the government knowingly procured or presented perjured testimony. To the contrary, the government asked Conway about the call from the unidentified woman and admitted the phone records, which contained no records of that call. Defense counsel questioned Conway about his truthfulness and argued to the jury that his statements about the unidentified woman were untrue. Thus, the inconsistency between the phone records and Conway's testimony was known to the jury and highlighted at trial.

The district court did not err in applying a two-level Guidelines enhancement for obstruction of justice. At sentencing, the district court properly determined that the defendant's trial testimony was false, willful, and material, and thus that it constituted perjury.

Finally, the defendant's sentence of 60 months' imprisonment was below the applicable Guidelines range of 97-121 months. The sentence was not, as defendant claims, "cruel and unusual." Instead, the sentence was substantively reasonable and amply supported by the district court's detailed findings under 18 U.S.C. § 3553.

## ARGUMENT

## I. The District Court Did Not Abuse Its Discretion in Overruling Defendant's Objection to Witness Testimony Explaining Inconsistent Statements.

### A. Standard of Review

Where there is a "timely objection … on the basis of relevance, we review the district court's corresponding evidentiary ruling for abuse of discretion." *United States v. Boswell*, 772 F.3d 469, 475 (7th Cir. 2014). Where no objection to a question was made, this Court reviews for plain error. *United States v. Durham*, 645 F.3d 883, 890 (7th Cir. 2011). Under plain-error review, a defendant must show that (1) there was error; (2) it was plain; (3) it affected his substantial rights; and (4) the court should exercise its discretion to correct

the error because it seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Id.*

## B. Analysis

At trial, pursuant to an order granting him immunity, Laron Conway testified that, while he was at work, he was contacted over the phone by an unidentified woman, who asked him to call defendant. Tr. 250, 256. Conway then described the content of his subsequent call with defendant and the actions that he took in response. Tr. 258-63. On direct examination, Conway testified that he was not "completely truthful" during his initial interviews with the FBI about this call with defendant, specifically, that he did not disclose "everything that was told to me [by defendant]." Tr. 251. More specifically, Conway testified as follows:

Q. Before your testimony today, you were interviewed by FBI agents?

A. Yes.

Q. Were you interviewed on more than one occasion?

A. Yes.

Q. Were you completely truthful with the FBI in those prior interviews?

A. No.

Q. What were you not truthful about?

A. Everything that was told to me.

Q. What do you mean by that?

A. What was told me by Ronald Coleman.

Q. Why weren't you completely truthful?

A. I made a bad mistake trying to protect some people, and I was scared myself.

Q. What people were you trying to protect?

A. Dewan and Ronald.

Q. In what way?

A. Because Dewan, being my cousin, and Ronald, being my friend.

Q. Were you afraid for your family?

A. I was.

Q. In what way?

A. Well, I knew that him being a Chicago police officer, I have heard of certain things happening to people.

Counsel for defendant: Objection to the relevance of this.

The Court: Overruled. The answer may stand.

Tr. 250-52. Defendant did not object to any other aspect of this portion of Conway's testimony, and in making the objection that he did, argued only that the testimony was irrelevant. For the first time on appeal, defendant now argues that the question "Were you afraid for your family?" was impermissibly leading.

The abuse of discretion standard applies to a district court's evidentiary rulings, and those rulings "will be reversed 'only where no reasonable person could take the view adopted by the trial court.'" *United States v. Reese*, 666 F.3d 1007, 1015 (7th Cir. 2012) (citations and quotations omitted). "Because the trial court is in a better position to evaluate both the probative and the prejudicial impact of evidence, 'a reviewing court will not lightly overturn the trial court's assessment.'" *United States v. Thompson*, 359 F.3d 470, 478 (7th Cir. 2004) (citations and quotations omitted). Rule 401 comprehends a "low threshold" for establishing that evidence is relevant, and defendant "faces a significant obstacle" in arguing that Conway's testimony explaining the reasons for his lies to the FBI should have been barred as irrelevant. *United States v. Boswell*, 772 F.3d 469, 475 (7th Cir. 2014).

The government did not err in eliciting Conway's testimony, as detailed above, which was necessary to explain his prior inconsistent statements and give the jury information it needed to evaluate Conway's credibility. "[E]vidence of bias, including evidence of a threat, to challenge the credibility of a witness who has made an inconsistent statement simply does not raise the same concerns as evidence of a threat offered, in the absence of a testimonial inconsistency, simply to 'boost' a witness' testimony." *Thompson*, 359 F.3d at 477 (citing *United States v. Thomas*, 86 F.3d 647, 654 (7th Cir. 1996)). Conway's testimony merely provided an explanation for his inconsistent

statements; it did not dwell on any of the reasons Conway cited for being fearful of cooperating with law enforcement, *see* Tr. 251. Therefore, the district court did not abuse its discretion in overruling defendant's relevance objection at trial, and allowing this brief explanation of Conway's inconsistent accounts to the FBI. *See, e.g.*, *Thompson*, 359 F.3d at 479 ("The district court did not abuse its broad discretion in concluding that the evidence of threats and recent violence were probative of [the witness's] credibility and bias."); *Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir. 1994) (refusing to grant the *habeas corpus writ* after a state trial court admitted evidence of threats to explain a witness's actions that would otherwise hurt the witness's credibility in the eyes of the jury). This is especially true given that defendant extensively cross-examined Conway about his inconsistent statements to the FBI and the fact that he had been granted immunity in exchange for his truthful testimony. *See e.g.*, Tr. 289-296.

Defendant's new objection—raised for the first time on appeal—to the question, "Were you afraid for your family?" also fails. Under the plain error standard, a defendant must show that (1) there was error; (2) it was plain; (3) it affected his substantial rights; and (4) the court should exercise its discretion to correct the error because it seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Durham*, 645 F.3d at 890.

There was no error because the question was neither leading nor inappropriate, as defendant contends. Rather than "hint[ing] at the answer the witness should give[,]" *United States v. Cephus*, 684 F.3d 703, 707 (7th Cir.2012), the question posed could have been answered with either "yes" or "no." Moreover, defendant did not challenge the testimony in his post-trial motions, and therefore waived or forfeited any error. Instead, defendant argued generally that Conway lied to the FBI and therefore should not be trusted. *See*, e.g., R. 52 at 3 ("Conway also admitted that he lied to the FBI and the prosecutors on several occasions. In addition, his phone records do not show a call from the unknown woman (or anyone else) on the morning of June 9, 2014 before he contacted Coleman. Nevertheless, he has remained adamant about receiving this phone call. His testimony cannot be trusted and contradicts the concrete facts"). Furthermore, defendant's argument, made for the first time on appeal, that, "[a]t no point in time prior to this testimony did Conway suggest that he was fearful or [sic] anyone, or that Chicago police officers hurt people," is accurate. *See* Br. 36.[2]

Even assuming that the prosecutor's question was leading, had defense counsel had timely objected, the prosecutor "could have rephrased the

---

[2] The record is undeveloped on this issue because it was not raised by defendant in the district court. However, a report of interview reflecting Conway's earlier statement regarding fear for his family was provided to the defendant in discovery prior to trial.

questions to elicit the same testimony . . . ." *See United States v. Durham*, 645 F.3d 883, 891 (7th Cir. 2011) (allowing leading questions of case agent on direct examination did not warrant relief on plain error review). Moreover, Rule 611(c) of the Federal Rules of Evidence permits the Court to allow leading questions when "necessary to develop testimony." *United States v. O'Brien*, 618 F.2d 1234, 1242 (7th Cir. 1980). The follow-up question by the prosecutor eliciting detail served to move along the testimony on the subject, without opening up a full-blown discussion of the reasons for the witness's fears. Thus, even if leading, the prosecutor's question was permissible. *See* Fed. R. Evid. 611(c) (permitting court to allow leading questions when "necessary to develop testimony." *United States v. O'Brien*, 618 F.2d 1234, 1242 (7th Cir. 1980)). Third, there was no surprise to the defendant given that the content of Conway's prior statements on this subject was known to the defendant as well as the prosecutor, and Conway was cross-examined extensively about his lies to the FBI, giving the jury ample opportunity to assess and weigh Conway's credibility and the truthfulness of his testimony.

For these reasons, this Court properly overruled defendant's objection to Conway's testimony on direct examination.

## II.    The Government's Witness Did Not Testify Falsely and the Government Did Not Knowingly Present False Testimony.

### A.    Standard of Review

To obtain a new trial on the basis that the government knowingly presented false testimony, the defendant must establish: (1) that there was false testimony; (2) that the government knew or should have known it was false; and (3) that there is a likelihood that the false testimony affected the judgment of the jury. Finally, when a defendant alleges that the prosecution used perjured testimony, "we must inquire into whether the defendant had adequate opportunity to expose the alleged perjury on cross-examination." *United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995).

### B.    Analysis

Defendant has not shown that Conway committed perjury, much less that the government knowingly procured or presented perjured testimony. Conway testified that he received a phone call from an unidentified woman who instructed him to call defendant. Tr. 256-57. It is undisputed that phone records, offered by the government at trial and admitted into evidence do not reflect any calls to Conway's cell phone prior to Conway's call to defendant on June 9, 2014, at 8:30 a.m.  Government Exhibit AT&T Records. As this Court has repeatedly held, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."

*United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995). Here, there is no evidence that Conway's statement was false – as opposed to testimony that resulted from confusion, mistake or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (describing elements of federal perjury statute). Indeed, an explanation offered by the government at trial was that Conway may have received the call at work, rather than on his cell phone. Tr. 577.

Even assuming that Conway's testimony was not accurate, defendant has not shown that the admission of Conway's testimony that he received a call from a woman directing him to call defendant affected the judgment of the jury. This is because the testimony does not "bear a direct relationship to the defendant's guilt or innocence." *United States v. Adcox*, 19 F.3d 290, 295 (7th Cir.1994). Regardless of how Conway came to speak to defendant on June 9, 2014, there was overwhelming, corroborated evidence at trial that defendant did speak to him, and that he revealed to Conway information about coming police activity. In addition to Conway's description of the call with defendant, the jury heard Davis's account of his call with Conway and the recorded calls between Davis and Bedenfield, and saw the phone records corroborating all of those calls. Tr. 339-51; 393-402. This evidence overwhelmingly supported the jury's verdict.

Moreover, there is no dispute that the defendant was on notice of the inconsistency between Conway's testimony and the phone records and that he had "adequate opportunity to expose the alleged perjury on cross-examination." *United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995) (quoting *Adcox*, 19 F.3d at 295; *United States v. Santiago*, 798 F.2d 246, 247 (7th Cir.1986)). Indeed, defense counsel cross-examined Conway extensively about the woman who called him. Tr. 278-80. And, in summation, defense counsel forcefully and repeatedly argued that Conway was a liar and that the jury should not believe him, stating, for example, "We know that's not true. That could not possibly be true. There is no such mystery woman calling him," and "Conway continues to insist it is from some women. It is not true. It is completely false." Tr. 555-56; *see also*, Tr. 566 (discussing "the call from the woman, which we know is not true"); 569 ("There is this issue I have talked about a couple times with the call that Conway claims he got from some woman, which never happened.")

On this record, defendant has not come close to establishing that inconsistencies between Conway's recollection about receiving a call from an unidentified woman and telephone records constituted perjury, much less that the government knowingly utilized perjured testimony, or that there was a likelihood that the testimony affected the judgment of the jury. For these reasons, defendant is not entitled to a new trial.

### III. The District Court Did Not Err in Applying a Two-Level Guidelines Enhancement For Obstruction of Justice.

#### A. Standard of Review

When applying the obstruction enhancement based on perjury, "the district court should make a finding as to all the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent." *United States v. Johnson*, 612 F.3d 889, 893 (7th Cir.2010)). This Court reviews *de novo* the adequacy of the district court's legal findings and reviews the underlying factual findings for clear error. *United States v. Chychula*, 757 F.3d 615, 619 (7th Cir. 2014).

#### B. Analysis

After hearing the evidence at trial, including the defendant's testimony, the district court applied a two-level enhancement for obstruction of justice. S. Tr. 7-8. In reaching this conclusion, the district court made detailed findings regarding the defendant's trial testimony and the manner in which it conflicted with credible evidence presented by the government:

> "The witness clearly took the witness stand and lied under oath. The lie itself was very material and substantial in terms of the litigation itself. And then his testimony under oath that he was arranging a picnic in the park with friends was completely overwhelmed by the other information in the case. It was a clear lie and not very well told. Clearly rejected by the jury. And as the Court heard that evidence as well, the Court also determined that it was a lie, an untruthful statement, under oath which was designed and calculated to confuse the jury on the point. The phone call itself was made to advise someone that the law enforcement

were about to make arrests and to search and seize. This was a warning call, which the defendant attempted to explain away on the basis that it was to arrange a meeting in the park with some old friends. And clearly his objective was not accomplished. It was a lie, it was a substantial lie, and the enhancement is properly assigned."

S. Tr. 7-8. Because the court found that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of "confusion, mistake, or faulty memory" *United States v. Mbaye*, 827 F.3d 617, 621 (7th Cir. 2016) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)), the obstruction enhancement was properly applied.

Defendant argues—without offering any factual support—that these factual findings were clearly erroneous. Br. 16. This conclusory argument is "easily reject[ed] … because it asks [the Court] to reweigh the evidence and overturn both the judge's and the jury's credibility determinations, which we do not do." *United States v. Mbaye*, 827 F.3d 617, 621 (7th Cir. 2016) (quoting *United States v. Taylor*, 701 F.3d 1166, 1173 (7th Cir. 2012).[3] As the district court correctly found, the evidence presented at trial amply supported the conclusion that defendant committed perjury when he testified that the

---

[3] In any event, as discussed in detail below, the defendant received a below-Guidelines sentence of 60 months. Even if the district court had declined to impose the obstruction enhancement, defendant's adjusted offense level would have been 28, and with a Criminal History Category of I, the applicable Guidelines range would have been 78-97 months, a range well above the sentence imposed.

purpose of his communications with Conway was to arrange a Father's Day picnic.

## IV. The Below-Guidelines Sentence of 60 Months' Imprisonment Was Substantively Reasonable and Did Not Violate the Eighth Amendment

### A. Standard of Review

This Court "presume[s] the district court's imposition of a below-Guidelines sentence to be reasonable" and reviews such a sentence for abuse of discretion. *United States v. Jones*, 696 F.3d 695, 699 (7th Cir. 2012).

### B. Analysis

At sentencing, the district court determined that defendant's total offense level was 30, his criminal history category was I, and the resulting advisory Guidelines range was 97-121 months. S. Tr. 36-37. Defendant argues that his below-Guidelines sentence is disproportionate to his offense, greater than necessary to meet with aims of 18 U.S.C. § 3553, and contrary to the "evolving standards of decency" in our society. Br. 51. As a result, he claims the sentence is "cruel and unusual" in violation of the Eighth Amendment. *Id.* at 47. He further asserts that the sentence is disparate to sentences received by police officers in similar cases. *Id.* at 51. Each of these arguments fails.

The 60-month sentence is not "grossly disproportionate" to defendant's criminal conduct. Defendant, a sworn police officer, intentionally interfered with a large-scale investigation into a drug trafficking organization, using

information he obtained as a trusted member of the Chicago Police Department. His success in causing Bedenfield, a leader of the DTO, to remove contraband—including weapons and drugs—from his residence in an effort to avoid detection by law enforcement demonstrate the extreme seriousness of defendant's conduct. Defendant's false trial testimony intended to hide his crimes and allow him to escape punishment provided even greater basis for a substantial sentence. As the district court noted, Operation Five Leaf Clover was a "very extensive operation … designed to arrest a large number of people and to search and seize major amounts of heroin." S. Tr. 10. The court found that, by alerting members of the trafficking organization being investigated, the defendant's actions went beyond a "run-of-the-mill breach of public trust" but instead went the "the essence" of defendant's membership in an investigative team working on a dangerous case that involved the seizure of "multiple weapons, multiple rounds of ammunition, and substantial amounts of heroin." S. Tr 10-11.

Second, contrary to defendant's assertion, the district court's full consideration of the factors contained in 18 U.S.C. § 3553 show that the sentence was sufficient, but not greater than necessary to meet the goals of § 3553. See S. Tr. ("the presentence investigation report points out many 3553 factors. And I'm taking into account all of them."). In determining the sentence, the court noted that defendant had done "commendable things during the

course of [his] life as a police officer and continue[d] to do that in terms of your family situation, specifically with reference to your mother." S. Tr. 23-24; *see also* S. Tr. 35 (taking into account that defendant has been a "loving, caring son"). Nevertheless, the court determined based on other factors that a substantial sentence was necessary.

Far from failing to "further any conceivable penological purpose," Br. 48, the court made particular findings that the sentence "must be significant enough here to serve as a general deterrent to others who would obstruct justice. And, indeed, it should be a message to police officers everywhere as well. It applies to the public, and it does apply, certainly, to officers of the law." S. Tr. 36. The district court found that the defendant lied at trial and continued to lie at sentencing. Defendant's complete absence of acceptance of responsibility and "any indication of remorse," S. Tr. 36, was a factor in imposing the sentence. Having considered these factors, the court nonetheless determined that the advisory Guidelines range of 97 -121 months was not "appropriate or fair," and sentenced the defendant to 60 months' imprisonment—more than three years below the low end of the Guidelines. This sentence was substantively reasonable given the record before the court. *See Jones*, 696 F.3d at 699.

The defendant's claim that there is a "disparity" between his sentence sentences received by other police officers is equally unavailing. Where, as

here, "a district court has correctly calculated the Guidelines range, we assume that significant consideration has been given to avoid unwarranted disparities between sentences. *United States v. Statham,* 581 F.3d 548, 556 (7th Cir. 2009).

The cases cited by defendant dealt with materially different charges and facts than those at issue here. In *United States v. Gould*, 983 F.2d 92, 93 (7th Cir. 1993), a police officer pleaded guilty to conspiracy to possess cocaine with the intent to distribute (a lesser included offense in the indictment) and stipulated that, while working as a police officer, he warned a member of the drug conspiracy about police surveillance. *Id.* This Court affirmed the 18-month sentence imposed by the district court, including the application of a two level enhancement for abusing a position of trust. *Id.* While defendant and Gould both abused positions of trust, Gould was convicted of a drug-related crime, not obstruction of justice. Second, unlike defendant who perjured himself at trial and repeated his lies to the district court at sentencing, Gould accepted responsibility and pleaded guilty. Likewise, the defendant in *United States v. Holt*, 170 F.3d 698, 700 (7th Cir. 1999) was convicted of a crime unrelated to obstruction of justice—conspiracy to knowingly and intentionally transfer an automatic weapon. Further, there was no finding of perjury or that Holt engaged in conduct that disrupted a large-scale investigation or endangered his fellow officers. *United States v. Christian*, 342 F.3d 744, 746

(7th Cir. 2003) and *United States v. Koon*, 518 U.S. 81 (1996), involved convictions against a police officers for violating the civil rights of suspects—facts dissimilar to those at issue here.

Finally, in *United States v. Watts*, 12-CR-87-1 (N.D.I.L Oct. 9, 2013), the defendant was sentenced to 22 months following a conviction for stealing money from the government in violation of 18 U.S.C. § 641—a sentence *above* the advisory guidelines range of 10 – 16 months. *Id.*, Docket No. 90, at 5, 26. The district court in *Watts* cited many of the concerns shared by the district court here, including *Watts's* "betrayal to your oath as a police officer" and to his community. *Id.* at 10. The court also cited the need for the sentence imposed to provide "adequate deterrence" for the defendant and "for anyone else" who might engage in such crimes. *Id.* at 24-25.

For the reasons stated above, the sentence should be affirmed.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court affirm the defendant's conviction and sentence.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

DEBRA RIGGS BONAMICI
Assistant United States Attorney
Chief of Appeals, Criminal Division]

/s/ *Melody Wells*
MELODY WELLS
Assistant United States Attorney

# RULE 32 CERTIFICATION

I hereby certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the Microsoft Office Word proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

By:  /s/ *Melody Wells*
MELODY WELLS
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois
(312) 353-1110

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2018, I electronically filed the foregoing Brief and Appendix of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted.

By: /s/ *Melody Wells*
MELODY WELLS
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois
(312) 353-1110